IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**AL SHERMAN HAMPTON, JR.**                                                                           **PLAINTIFF**

**v.**                                                                                    **CIVIL ACTION NO. 1:20-cv-195-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                                    **DEFENDANT**

**OPINION AND ORDER**

Plaintiff Al Sherman Hampton, Jr. brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security Administration denying his claims for disability insurance benefits, supplemental security income, and child's insurance benefits. Having considered the parties' submissions, the record, and the applicable law, the Court finds that the Commissioner's Motion to Affirm [15] should be GRANTED, the Commissioner's final decision should be AFFIRMED, and this action should be DISMISSED with prejudice.

**PROCEDURAL HISTORY**

On May 4, 2015, Plaintiff applied for disability insurance benefits, supplemental security income, and child's insurance benefits, alleging that he had been disabled since October 5, 2012, due to attention deficit disorder, hypertension, obesity, asthma, bladder problems, and stomach problems. (Administrative Record [13] at 246-63; 289). After the agency denied Plaintiff's claims, an Administrative Law Judge ("ALJ") held a hearing, and on November 28, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. ([13] at 163-76). Plaintiff appealed the ALJ's decision to the Appeals Council, and on October 3, 2018, the Appeals Council remanded the case, directing the ALJ to consider a submission from Plaintiff's workplace supervisor, Susan Orr, dated August 17, 2017. ([13] at 182-83).

The ALJ held a second hearing and, on July 31, 2019, issued another decision finding that Plaintiff was not disabled. ([13] at 23-36). Plaintiff again appealed the ALJ's decision, and on April 3, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's July 31, 2019, decision the final decision of the Commissioner. ([13] at 6-9). Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S DECISION

In her July 31, 2019, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[1] and determined that Plaintiff was not disabled. At step one, the ALJ noted that Plaintiff worked after the alleged disability onset date—October 5, 2012. ([13] at 26).[2] The ALJ, however, concluded that Plaintiff had not engaged in substantial gainful activity. ([13] at 25).

At step two, the ALJ found that Plaintiff had the following severe impairments: attention deficit disorder, borderline intellectual functioning, anxiety, speech dysfluency, and obesity.

---

[1] This analysis requires the ALJ to make the following determinations:
  (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
  (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
  (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
  (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
  (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.92. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[2] Plaintiff worked as a food server at a retirement home. The ALJ noted that Plaintiff earned $10,404.22 in 2013; $10,173.60 in 2014; $10,762.33 in 2015; $11,953.69 in 2016; $11,617.51 in 2017; and $3,212.00 in the first quarter of 2018.

2

([13] at 26).  The ALJ found that other medically determinable impairments—asthma, hypertension, and diabetes—were not severe. ([13] at 26).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. ([13] at 26).

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[3] to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[4] except he is limited to simple, routine tasks with only occasional interaction with coworkers and rare interaction with the general public (with rare meaning no more than five encounters per day with each encounter lasting no more than five minutes and not requiring actual customer service)." ([13] at 28).  At step four, the ALJ found that Plaintiff had no past relevant work. ([13] at 34).  At step five, the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. ([13] at 35).  Accordingly, the ALJ found that Plaintiff was not disabled from the alleged onset date (October 5, 2012) through the date of the decision (July 31, 2019). ([13] at 36).  The ALJ also determined that Plaintiff had not been disabled at any time prior to December 17, 2014, the date he reached age 22. ([13] at 36).

---

[3] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b); 416.967(b).

**STANDARD OF REVIEW**

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

**ANALYSIS**

Plaintiff raises a single issue on appeal:

The ALJ erred as a matter of law when she failed to properly consider Plaintiff's supportive living and work environments in determining his RFC, as required by

4

> Agency policy. This error requires reversal of the ALJ's decision, with an order to immediately begin paying benefits to him or, in the alternative, remand for further proceedings.

(Memorandum Brief [14] at 1).

Plaintiff argues that his limited ability to work existed in "the context of his ability to do so with multiple, frequent (if not constant) psychosocial supports." ([14] at 9). According to Plaintiff, he relies on extensive support and supervision in his workplace and at home. Plaintiff points to, among other things, the August 17, 2017, questionnaire completed by Plaintiff's workplace supervisor, Susan Orr, and testimony from Plaintiff's sister. Plaintiff argues that the ALJ did not properly consider his supportive environment or account for it in her RFC assessment as required by agency regulations.[5]

An ALJ has a duty to develop the record before her and must make an RFC assessment that is supported by substantial evidence. An RFC determination must be based on all the relevant evidence in the case record, including the need for a structured environment. *See* SSR 96-8p. The claimant, however, bears the burden of demonstrating that the ALJ's determination is not supported by substantial evidence. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). As noted above, "[s]ubstantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames*, 707 F.2d at 164.

In determining Plaintiff's RFC, the ALJ considered opinion evidence, subjective complaints, medical records, and activities of daily living. The ALJ considered testimony and/or statements from Plaintiff, his mother, and his sister. The ALJ acknowledged the sister's

---

[5] Plaintiff cites to 20 C.F.R., part 404, subpart P, appendix 1 § 12.00(D), SSR 96-8p, SSR 16-3p, and Program Operations Manual System (POMS) DI 34001.032(D)(1) for the proposition that an ALJ must include a claimant's need for a supportive environment in its RFC analysis.

5

testimony that she "helps her brother with his day-to-day living" and that her brother's impairments "prevent him from having other occupations." ([13] at 30).  However, the ALJ also noted testimony acknowledging Plaintiff's ability to cook, clean, wash clothes, and get along with his coworkers and supervisors. ([13] at 27-28).  The ALJ assigned "some weight" to the statements and testimony from Plaintiff's mother and sister, but determined that "to the extent the statements assert or imply greater limitations" than those assigned by the ALJ, they are not supported by the objective and clinical evidence. ([13] at 34).

      The ALJ specifically considered the questionnaire completed by Plaintiff's supervisor.  The supervisor explained that as a food server at a retirement home, Plaintiff served food, stocked shelves, and cleaned.  The ALJ noted the supervisor's opinions that Plaintiff "had strong difficulty refraining from overstocking, following instructions, focusing on task (he often leaves the serving line to speak with the boss about a day off he wants/needs) and that he 'would not be employable in competitive employment in the regular business world.'" ([13] at 34; 271-73).  The ALJ gave the supervisor's opinions "some but not great or even significant weight." ([13] at 34).  The ALJ explained that she "considered and noted Ms. Orr's assertions of limitations even in the claimant's structured work environment, but assigns greater weight to the opinions of the psychologists and others regarding the claimant's capabilities." ([13] at 34).

      The ALJ pointed out that Dr. Patsy Zakaras performed a psychological evaluation of Plaintiff and determined that he seemed "capable of performing routine, repetitive tasks" and seemed "capable of following and understanding directions." ([13] at 28; 391).  The ALJ considered a mental status evaluation performed by Dr. Michael Zakaras. ([13] at 32-33; 412-14).  Dr. Zakaras observed that Plaintiff "has never seen a psychologist or psychiatrist except when being evaluated through Social Security Disability." ([13] at 32; 413).  Dr. Zakaras

determined that Plaintiff "clearly does seem to be doing well at the current time with his current employment of 30 hours per week that is very highly structured." ([13] at 33-34; 414).

The ALJ also considered the agency psychological consultant's opinion that Plaintiff's mental impairments were not severe. ([13] at 34; 150; 157). The ALJ afforded the consultant's opinion "some weight," but determined that Plaintiff's mental impairments were severe. ([13] at 34). The ALJ determined that the RFC should accommodate for Plaintiff's mental impairments, including attention deficit disorder. ([13] a 34).

Concerning Plaintiff's attention deficit disorder, that ALJ noted that the symptoms of this impairment were controlled with medication. ([13] at 33). Plaintiff and his family members reported that his medication helped him stay on task, and a treating physician noted that Plaintiff's medication was "working adequately." ([13] at 27; 30; 32; 435).

The record demonstrates that the ALJ considered Plaintiff's structured, supportive environment when she included limitations in the RFC to accommodate for Plaintiff's mental impairments. The ALJ determined that Plaintiff had the RFC to perform light work but limited his work to "simple, routine tasks with only occasional interaction with coworkers and rare interaction with the general public (with rare meaning no more than five encounters per day with each encounter lasting no more than five minutes and not requiring actual customer service)." ([13] at 28). The Commissioner points out that this RFC "is specifically tailored to Plaintiff such that it addresses the type of tasks; the frequency of interactions with coworkers and the public; a definition of 'rare' that caps the number of such daily encounters; a definition of the maximum duration of encounters; and the complete elimination of any need to provide actual customer service." ([16] at 6-7).

During the hearing, the ALJ asked the vocational expert ("VE") whether jobs existed in the national economy for an individual with the Plaintiff's age, education, work experience, and RFC. ([13] at 35; 88). The VE testified that there were such jobs, including housekeeping cleaner, silver wrapper, and photocopy machine operator. ([13] at 35; 89).

The Court recognizes that there is some evidence of record which supports Plaintiff's claim, including statements from his family members and his supervisor. However, the ALJ gave sufficient reasons for her findings and pointed to portions of the record containing credible and substantial evidence supporting the ALJ's determination. The Court does not resolve conflicts in the evidence; that is left to the discretion of the Commissioner, and Plaintiff has failed to show that no credible evidence supports the Commissioner's determination. *Selders*, 914 F.2d at 617; *Boyd*, 239 F.3d at 704.

## CONCLUSION

Based on the foregoing, the Court finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ.

IT IS, THEREFORE, ORDERED that:

1. The Commissioner's Motion to Affirm [15] is GRANTED.

2. The Commissioner's final decision is AFFIRMED.

3. This action is DISMISSED with prejudice.

4. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 22nd day of March, 2022.

                               s/Michael T. Parker
                               UNITED STATES MAGISTRATE JUDGE